UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANIEL JOSEPH ANDERSON, </br></br>Plaintiff, </br></br>v. </br></br>CAROLYN W. COLVIN, </br>Acting Commissioner of </br>Social Security, </br></br>Defendant. | CAUSE NO. 3:15-CV-00311-MGG |

**OPINION AND ORDER**

Plaintiff Daniel Joseph Anderson ("Anderson") filed his complaint in this Court seeking reversal of the Social Security Commissioner's final decision denying his application for disability benefits under Title II of the Social Security Act. Alternately, Anderson seeks a remand for further consideration of his application. On November 13, 2015, Anderson filed his opening brief. Thereafter, on February 18. 2016, the Commissioner filed a responsive memorandum asking the Court to affirm the decision denying Anderson benefits. Anderson filed his reply brief on March 2, 2016. This court may enter a ruling on this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g)

**I.   PROCEDURE**

On June 20, 2012, Anderson filed his Title II application for Disability Insurance Benefits ("DIB") with the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 423 alleging disability beginning January 6, 2012. The SSA denied Anderson's application initially on October 12, 2012, and again upon reconsideration on January 14, 2013. On December 5, 2013, a hearing was held before an administrative law judge ("ALJ") where Anderson and an

impartial expert appeared and testified. On March 21, 2014 the ALJ issued his decision finding that Anderson was not disabled and denied his application for DIB. On May 15, 2015, the Appeals Council denied Anderson's request for review, making the ALJ's decision the final decision of the Commissioner. Through this action Anderson seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. RELEVANT BACKGROUND

Anderson was born on May 22, 1962, making him 49 years old at the alleged disability onset date of January 6, 2012. Anderson sought DIB based upon deficiencies related to back pain. Anderson has a high school diploma, and has a substantial work history including working as a forklift operator for two years, a material handler for a year, a welder for four years, and a finish inspector. Anderson's last job was as a welder, in 2012, where he worked for one week and was then terminated after missing a day due to a stomach virus. Unemployed, Anderson applied for disability benefits.

### A. Plaintiff's Testimony

At the hearing before the ALJ, Anderson testified regarding his conditions alleging that he suffered from back pain, left shoulder pain, asthma, insomnia, and hypertension. Anderson testified he has had insomnia since leaving the military and has worked to ameliorate the effects of the insomnia. Additionally, Anderson stated that he worked around chemicals and other irritants in the course of his employment as a welder while suffering from symptoms related to insomnia. During the hearing, Anderson noted that his left shoulder pain is no longer part of his claim for disability. Anderson testified he can walk for 10 to 20 minutes at a time without assistance of a brace or cane and can sit for 10 to 15 minutes at a time. He testified that his pain medication does not work and that he does not have side effects from the medication.

B.   **Medical Evidence**

As part of his disability application, Anderson provided the ALJ with medical evidence from 2011 to November, 2013. In 2011 and 2012, Anderson was treated by chiropractor R. Brittany, D.C., for complaints of low back, neck, right shoulder, and knee pain. In January, 2011, Anderson complained of left shoulder pain to his primary care physician, Michael R. Williams, M.D. In July, 2012, Anderson continued complaining of chronic low back and left shoulder pain and asked Dr. Williams for a refill of pain medications. Dr. Williams found no abnormalities during the examination, except pain in Anderson's left shoulder and back, and asthma. Also in July 2012, Anderson saw orthopedic specialist William J. Berghoff, M.D. for complaints of low back pain. Dr. Berghoff advised Anderson to avoid running, jumping, or axial loading activities, but that he could do weight bearing and other activities. Dr. Berghoff prescribed pain medications.

Consultative examiner Sasiskala Vemulapalli, M.D. examined Anderson in August, 2012, at the request of the state agency. During the examination, the examiner found Anderson's legs were normal, he had no pain with walking, and that he demonstrated normal gait and normal balance. Dr. Vemulapalli opined that the claimant is able to maintain balance during ambulation while carrying objects less than 10 pounds. The doctor opined that Anderson is able to lift/carry less than 10 pound often and over 10 pounds occasionally. Dr. Vemulapalli found that Anderson is able to stand/walk for two hours in an eight-hour day with enough rest in between.

In September, 2013, Anderson met with Interventional Pain Consultants and Dr. Nolan, M.D. at which time Anderson presented in distress and with a slow and cautious gait. Dr. Nolan diagnosed Anderson with chronic pain syndrome, lumbar disc degeneration[1] and

---

[1] Lumbar disc degeneration is a "condition in the spine in which… the discs may either come in contact with each other…the opening of a spinal disc or the narrowing of the spinal canal which would lead to pain and possibly affect

spondylolisthesis[2], kyphosis[3] and disc displacement and increased his dose of hydrocodone for pain and added prescriptions of Cymbalta and Naproxen. A neurological examination revealed intact reflexes, no impairment of his ability to walk on his toes or heels, and normal sensation. Examination revealed no swelling over the lumbar spine, normal strength and tone, no crepitus, no paraspinal spams, and no deformity.

In August, 2013, Anderson met with another consultative examiner, Ralph Inabnit, D.O. for an examination, at which he noted his history of chronic low back pain that he rated as 8 out of 10 and described as a dull ache across his back. Anderson also reported that standing exacerbates his pain and that he has numbness at times in both legs when standing. Anderson denied any physical therapy, use of a cane or walker, or receiving an epidural or facet block from a pain specialist. Anderson told Dr. Inabnit that he could lift twenty-five pounds and that he was unable to do housework, laundry, or shopping, that he could lift, drive, dress, feed, and bathe himself, as well as pick up keys and coins. When examined, Anderson was found to be obese with a reduced range of motion in his low back. Dr. Inabnit opined that Anderson can sit for two hours, stand for two hours, and walk for two hours at a time, for a total of four hours in an eight-hour workday. Dr. Inabnit opined that the claimant should never climb ladders or scaffolds, but could occasionally balance, stoop, kneel, crouch, crawl, and claim stairs and ramps.

On June 26, 2016, Anderson returned to Dr. Williams, his treating physician, for a refill of medication and for Dr. Williams to complete the RFC assessment form for his "application for disability." Doc. No. 11 at 293. Dr. Williams opined that during a hypothetical eight-hour day

---

nerve function." WebMD, http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview (last visited September 16, 2016)
[2] Spondylolisthesis is a "condition in which one bone in your back slides forward over the bone below it." WebMD, http://www.webmd.com/back-pain/tc/spondylolisthesis-topic-overview (last visited September 16, 2016)
[3] Kyphosis is a spine curvature disorder characterized by the abnormally rounded upper back. WebMD, http://www.webmd.com/back-pain/guide/types-of-spine-curvature-disorders (last visited September 16, 2016)

Anderson would need to recline or lie down in excess of the typical 15-minute morning break, the 30-60 minute lunch, and the typical 15-minute afternoon break. Dr. William found that Anderson can sit for 20 minutes at a time and stand/walk for 20 minutes at a time for a total of 3 hours of sitting and 3 hours standing/walking in an 8-hour workday. The doctor opined that Anderson requires the ability to shift from sitting, standing, or walking and would need to take unscheduled breaks on an hourly basis for a total of 40 minutes during an 8-hour workday. The doctor also opined that Anderson can lift up to 10 pounds frequently and up to 20 pounds occasionally. Dr. Williams found that Anderson does not have any limitation in performing repetitive reaching, handling, or fingering. The doctor opined that the claimant will be absent from work three or four times a month.

## C. The ALJ's Determination

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed in the SSA regulations. At Step One, the ALJ found that Anderson had not engaged in substantial gainful activity since January 6, 2012, the alleged onset date. At Step Two, the ALJ found Anderson had the following severe impairment: lumbar degenerative disc disease with kyphosis, spondylolisthesis, chronic pain syndrome, and obesity. He also found that Anderson suffered from the several non-severe impairments including asthma, insomnia, hypertension, and left shoulder pain. However, at Step Three, the ALJ found that Anderson's severe impairments in combination and separate did not meet or medically equal Listing 1.04, which set the standard for impairments of the musculoskeletal system, including disorders of the spine. The ALJ noted that the Listings do not contemplate obesity individually; however, the ALJ considered the impairment in combination with Anderson's other impairments. Further the ALJ found that Anderson's back impairment

5

did not rise to a Listing level of severity. The Listing requires an impairment resulting in the compromise of a nerve root or spinal cord. Additionally, Anderson would need evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, limitation of motion of the spine and motor loss accompanied by sensory or reflex loss to meet the Listing. The ALJ found that neither situation applied leading to the conclusion that Anderson back impairment does not rise to the severity required under Listing 1.04.

Before proceeding to Step Four, the ALJ determined Anderson's residual functional capacity ("RFC"). The ALJ concluded that Anderson had the ability to perform a reduced range of light work as defined in 20 CFR § 404.1567(b). The ALJ found that Anderson was able to perform the following functions:

> [Anderson] was able to sit for two hours at a time, up to four hours out of an eight-hour workday. [Anderson] can stand for up to two hours at a time, walk for up to two hours at a time, and stand and/or walk for four out of eight hours. [Anderson] van lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally. [Anderson] can occasionally kneel, crouch, crawl, balance and stoop. [Anderson] is unable to climb ropes, ladders, or scaffolds, but may occasionally climb stairs and ramps with one or two flights of stairs with rails. [Anderson] can occasionally bend and stoop in addition to what is required to sit.

At Step Four, the ALJ found that with the aforementioned limitations, Anderson was able to perform past relevant work as a parts inspector. For this job to be properly considered past relevant work, the ALJ must consider whether three criteria of earning, duration, and recency are satisfied. 20 CFR §§ 416.965; SSRs 82-61, 82-62, 82-40, 96-8p, 03-03p, 82-63, 05-1c. The ALJ found that Anderson worked as a parts inspector from September 2007 until February 2008. The ALJ determined that during this period Anderson reached substantial gainful activity level. The Vocational Expert ("VE") indicated that a parts inspector is a semi-skilled job with a Specific Vocational Preparation rating ("SPV") of four. A job with an SPV of four requires that the claimant have over three months of training up to and including six months of training.

Anderson testified that he has worked as a parts inspector for six months. The job was performed in the past 15 years by Anderson. In comparing Anderson's RFC with the physical and mental demands of the work, the ALJ found that Anderson would still be able to perform the job of parts inspector given the limitations of the RFC. Based on these findings, therefore, the ALJ determined Anderson had not been disabled from January 6, 2012, the alleged onset date. Consequently, the ALJ denied disability benefits to Anderson.

## III. ANALYSIS

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v, Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

A reviewing court is not to substitute its own opinion for that of that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Judicial review is limited to determining whether substantial evidence supports the ALJ's findings. *Schmidt v. Astrue*, 469 F.3d 833, 841 (7th Cir. 2007).

### B. Issues for Review

Anderson seeks reversal and remand of the ALJ's decision, arguing that the ALJ's opinion is not supported by substantial evidence. In challenging the ALJ's decision, Anderson

7

argues (1) that the ALJ improperly discounted the opinion of Anderson's treating physician, Dr. Williams by failing to give good reasons for doing so; (2) the ALJ was patently wrong in his credibility assessment of Anderson; (3) the ALJ's Step Four determination relied on the VE's testimony, which was based on an incomplete hypothetical question.

### 1. Weight Given to the Opinion of Dr. Williams

In determining the proper weight to accord medical opinions, "[t]he ALJ must give substantial weight to medical evidence and opinions submitted unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Charter*, 55 F.3d 309, 313 (7th Cir. 1995). In addition, a treating physician's opinion is given controlling weight when it is well-supported by clinical techniques and diagnostic testing and is not inconsistent with other medical evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). A treating physician is a physician who has provided treatment to the claimant on more than one occasion. *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other substantial evidence on the record. *Dixon v. Massanari*, 270 F.3d 863, 870 (7th Cir. 2000). While the ALJ is not required to award a treating physician controlling weight, the ALJ must articulate, at a minimum, his reasoning for not doing so. *Hofslien*, 439 F.3d at 376-377. The court must allow an ALJ's decision to stand if he "minimally articulate[d]" his reasons, a standard of review described as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

The ALJ's opinion here, however, reflects consideration of Dr. Williams's opinion and articulates reasons for giving it little weight. The ALJ explicitly acknowledged Dr. Williams's treatment notes from November 2011 through April 2013 noting that they reported Anderson's back pain without any objective medical findings indicative of disabling limitations of function.

*See* Doc. No. 11 at 30. Further, the ALJ referenced Dr. Williams's treatment notes from Anderson's subsequent visit in June of 2013, which reported Anderson's variety of complaints and showed that he scheduled a functional capacity evaluation related to his "application for disability." *See* Doc. No. 11 at 293. The ALJ also cited Dr. Williams's opinion that Anderson would need to recline or lie down during a hypothetical eight-hour workday in excess of the typical 15-minute break in the morning the 30-60 minute lunch and the typical 15-minute break in the afternoon; could walk half a city block before needing to rest or have significant pain.

The ALJ then explained that full application of Dr. Williams's opinion would require limiting Anderson to sedentary work, but that the objective medical findings undermined Anderson's allegations of disabling pain. The ALJ noted that Dr. Williams's opinion arose not in the course of treatment but in direct response to Anderson's pursuit of disability benefits. *See* Doc. No. 11 at 33-34. The ALJ also noted the possibility that Anderson may have been present when the opinion was given. Doc. No. 11 at 31. In addition, the ALJ found that the objective medical findings of consultative physicians Inabnit and Vemulapalli as well as pain specialist Nolan were inconsistent with Dr. Williams's objective medical findings and his disability opinion.

Anderson argues that the ALJ's reasons for discounting Dr. Williams's opinion are flawed. Specifically, Anderson contends that neither the question of whether Dr. Williams's completed Anderson's disability form in the course of treatment or in pursuit of disability benefits nor Anderson's potential presence when Dr. Williams's completed the disability form is an appropriate ground to discount a medical opinion. Indeed, the fact that "evidence has been solicited by the claimant is not a sufficient justification to belittle or ignore evidence." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (citing *Moss v. Astrue*, 555 F.3d 556, 560-61 (7th Cir.

2009)). "Quite the contrary, in fact. The claimant bears the burden of submitting medical evidence in establishing her impairments and her residual functional capacity." *Id.* (citing CFR §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a) (3)). Even assuming that the ALJ was wrong in taking in consideration of the presence of Anderson, these facts in his RFC analysis does not justify remand in this case because the ALJ articulated other reasons for discounting Dr. Williams's opinion.

For instance, the ALJ considered the September 2012 magnetic resonance imaging ("MRI") that Anderson contends supports Dr. Williams's disability opinion but noted that the MRI showed only a severe medical impairment that is not akin to a disability. Additionally the ALJ cited normal clinical findings by Dr. Nolan in September 2013 showing normal strength, tone, sensation, and gait found to support his conclusion that Dr. Williams's opinion conflicted with other objective medical evidence. Further, the ALJ acknowledged Anderson's examination by Dr. Nolan, where Dr. Nolan found Anderson had intact reflexes, no impairment of his ability to walk on his toes or heels, and normal sensation. As a result, the ALJ had substantial evidence to conclude that Dr. Williams's opinion deserved less weight because it is internally inconsistent and inconsistent with other substantial evidence on the record. "Where conflicting evidence allows reasonable minds to differ in determining whether the claimant is entitled to benefits, the responsibility for that decision rests with the Commissioner." *Mandella v. Astrue*, 820 F. Supp.2d 911, 921 (E.D. Wis. 2011) (citing *Schenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001)). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Goo v. Colvin*, Case No. 15 C 5858, 2016 WL 3520191, at *1 (N.D. Ill. June 28, 2016) (citing *Elder v. Astrue*, 429 F.3d 408, 413 (7th Cir. 2008)).

## 2. Credibility

Anderson contends that the ALJ's credibility determination is unsupported by substantial evidence. Anderson suggests that the ALJ should have taken the subjective nature of his assessment of his abilities as well as the assessment of Anderson's chiropractor into greater account in reaching his disability decision.

In assessing a claimant's subjective symptoms, the ALJ must follow a two-step process. SSR 96-7p.[4] The ALJ must first determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id*. If such an underlying impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id*. Whenever a claimant's statements about symptoms and limitations of his impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on the consideration of the entire case record. *Id*. An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence on the record, and be sufficiently specific to make clear to the claimant and any subsequent reviewers the weight the ALJ gave to the claimant's statement and the reasons for that weight. SSR 96-7p. Yet, the ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of disability. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

---

[4] The SSA has recently updated its guidance about how to evaluate symptoms in disability claims by issuing SSR 16-3p. The new Ruling eliminates the term 'credibility' from the SSA's sub-regulatory policies to 'clarify that subjective symptoms evaluation is not an examination of the individual's character.' SSR 16-3p." *Goo*, No. 15 C 5858, 2016 WL 3520191, at 5. However, at the time of the ALJ's decision, credibility was assessed pursuant to SSR 96-7p. Accordingly, the Court will address Anderson's credibility argument.

While a claimant can establish the severity of his symptoms by his own testimony, an ALJ need not accept the claimant's subjective complaints to the extent they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Since the ALJ is in the best position to determine a witness's truthfulness, a court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In this case, the ALJ found Anderson's allegations of the severity of his symptoms not fully credible. In support, the ALJ cited objective medical evidence and other evidence, including Anderson's statements to physicians and Anderson's statements about his activities to Dr. Inabnit, the consultative examiner. The ALJ discussed Anderson's need for pain medication, but noted that he did not report any side effects to doctors. The ALJ also referenced that Anderson denied use of physical therapy, a cane, or any other assistive device to walk, back support, or pain clinic treatment. Despite these facts, Anderson argues that the ALJ's credibility determination was patently wrong because the ALJ relied upon a false fact and failed to fully consider the evidence presented by Anderson's chiropractor. The Court is not persuaded.

First, the Commissioner conceded in her response brief that the ALJ may have misstated a fact in his opinion. Specifically, the ALJ's opinion states that Anderson "acknowledged sitting more than 50% of the day which appears inconsistent with his testimony that he can only sit for 10-15 minutes before having to lie down for about two hours before the pain goes away." Doc. No. 11 at 32. The commissioner concedes that the administrative record does not show

12

Anderson ever making such an acknowledgment but argues that this in itself is not a sufficient reason to remand the ALJ's decision.

Similarly, the Commissioner contends that the ALJ's consideration of evidence from Dr. Brittany is arguably incomplete, but does not show that the ALJ's credibility determination is patently wrong and worthy of remand. For instance, the ALJ cites to the chiropractic treatment notes of Dr. Brittany to support his credibility determination. The ALJ states that the treatment notes "reflect subjective complaints and do not document observations indicative of disabling limitations of function." Doc. No. 11 at 32. The treatment notes in question are a chart of dozens of visits Anderson made to Dr. Brittany, indicating Anderson sought significant amounts of treatment. The Commissioner agrees that the records from Dr. Brittany may not detract from Anderson's credibility. Nevertheless, where an ALJ credibility determination is not without fault, merit in other justifications may be enough for such a determination. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011). In other words, "not all of the ALJ's reasons must be valid as long as enough of them are." *Simila v. Astrue*, 573, F.3d 503, 517 (7th Cir. 2009); *Shamek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Where an error is harmless to the ultimate decision, by the ALJ, the administrative determination need not be reversed by the District Court. *McKinzey*, 641 F.3d at 892.

The ALJ's factual misstatement about Anderson's symptoms and potentially excessive emphasis on Dr. Brittany's treatment notes in making his credibility determination are not enough to derail the ALJ's credibility determination. Indeed, Anderson fails to recognize the ALJ's other reasons for giving less weight to Anderson's testimony and alleged symptoms. In particular, the ALJ noted that "objective medical findings and facts also appear inconsistent with allegations of disabling limitations of function or at least limitations of function greater than

those reflected in the aforementioned residual functional capacity." Doc. No. 11 at 32. The ALJ also references to Dr. Nolan's examination and findings that Anderson was normal in reflexes, sensation, and gait; had negative straight leg raises; lacked any spasm; and had normal strength and tone. Further, the ALJ notes the record does not document ongoing objective medical findings of significant side effects, resulting in significant limitations of function, for twelve months in duration, despite medication adjustments and changes. Doc. No. 11 at 32. In light of the ALJ's reliance on substantial objective medical evidence showing that Anderson was exaggerating his symptoms and the limitations of Anderson's chiropractor's evidence, the ALJ's credibility determination was supported by enough valid evidence and was therefore not patently wrong.

### 3. Step Four Determination

Once the ALJ defines a claimant's RFC, the ALJ must then determine any past relevant work at Step Four. 20 CFR §404.1520 (f)). To reach the Step Four conclusion, the ALJ typically poses hypothetical questions. A proper hypothetical question is "supported by medical evidence in the record." *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). An ALJ finds a claimant's RFC "based on all the relevant medical and other evidence." 20 CFR. § 404.1545 (a) (3). "All that is required is that the hypothetical question be supported by medical evidence in the record." *Meredith*, 833 F.2d 650, 654.

Here, Anderson argues that the ALJ's Step Four determination is unsupported by substantial evidence because the ALJ erred in relying on vocational testimony elicited in response to an incomplete hypothetical question. In essence, Anderson is extending his argument that the ALJ's RFC determination is incorrect to the Step Four analysis. In fact, Anderson simply reargues the issue of the proper weight for Dr. Williams's opinion in the ALJ's

14

hypothetical question. As discussed above, the ALJ's properly discounted Dr. Williams's opinion, therefore the ALJ's hypotheticals to the VE which were consistent with the RFC, are supported by substantial evidence. Because neither of Anderson challenges to the ALJ's RFC determination justify remand, the ALJ's RFC determination is supported by substantial evidence and should be therefore affirmed.

## IV. CONCLUSION

For the above reasons, this Court concludes that the ALJ did not err in the RFC analysis by discounting the opinion of Dr. Williams, Anderson's treating medical physician. In addition, the ALJ's credibility determination was not patently wrong and his Step Four conclusion was supported by substantial evidence. Therefore, Anderson's motion for reversal or remand is **DENIED**. [Doc. No. 15.] This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED**

Dated this 20th day of October, 2016

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge